**EOD**

05/16/2024

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DEBORAH ANN SMITH** | § | Case No. 22-20084 |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| PARU CHAINY, Individually | § | |
| and as Representative of the | § | |
| Estate of Dil Chainy and | § | |
| SHARU BHAU | § | |
| | § | |
| Plaintiffs | § | |
| v. | § | Adversary No. 22-02003 |
| | § | |
| DEBORAH ANN SMITH | § | |
| | § | |
| Defendant | § | |

### MEMORANDUM OF DECISION REGARDING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a tragic case in which Plaintiffs are the bereaved family of Mr.

Dil Chainy, an innocent man killed in a horrible drunk driving hit and run

accident.  Defendant is the elderly mother of the drunk driver, her son who is

now serving a long prison sentence.  Plaintiffs**,** Paru Chainy**,** Individually and

as Representative of the Estate of Dil Chainy, Deceased, and Sharu Bhau,

Individually (the "Plaintiffs") allege Defendant, Deborah Ann Smith (the

"Debtor" or "Defendant") should be responsible under 11 U.S.C. § 523(a)(6) for

the death of Mr. Dil Chainy because she co-signed a car loan for her son's

-1-

purchase of the vehicle with which he later struck and killed Mr. Chainy.

Defendant on October 16, 2023 filed her "Motion for Summary Judgment"

(the "Motion") requesting summary judgment against Plaintiffs.  In the

Motion, Defendant argues there is no genuine issue of material fact that she

lacked the requisite intent under 11 U.S.C. § 523(a)(6) to support a finding of

willful and malicious injury in favor of Plaintiffs.  After consideration of the

pleadings, proper summary judgment evidence submitted, and the relevant

legal authorities, the Court agrees with Defendant.  For the reasons

explained in this memorandum, Defendant's Motion is GRANTED.

## I.  Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334

and 157.  The Court has the authority to enter a final judgment in this

adversary proceeding because it constitutes a statutorily core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A) and (I), and meets all constitutional

standards for the proper exercise of full judicial power by this Court.

## II.  Facts and Procedure

Defendant, Mrs. Smith, lives in Marshall, Texas and is the mother of

Matthew Bradley Smith.  Mr. Smith lived, during the relevant time, in

Dallas, Texas.[1]  He has not lived with his mother since high school, and is

---

[1] Mot., ECF No. 19 at 7 ¶ 30.

forty-five years old.[2]

After leaving home, Mr. Smith had several brushes with law enforcement, several of which resulted in convictions for driving while intoxicated.[3]  First on December 7, 2000, Mr. Smith was convicted of driving while intoxicated in Dallas County, Texas in case #MB0051694.[4]  Then, on July 12, 2005, Mr. Smith was convicted a second time of driving while intoxicated in Dallas County, Texas in case #MB0547961.[5]  Later, on August 16, 2007, Mr. Smith was convicted a third time of driving while intoxicated in Dallas County, Texas in case #FO520714W.[6]  Two years later on December 1, 2009, Mr. Smith was convicted of "Driving While Under the Influence of Intoxicating Liquor" in Sweetwater County, Wyoming, in case #CR-2009-0480-001.[7]  Last, on August 27, 2010, Mr. Smith was convicted of "Driving While Under the Influence of Intoxicating Liquor" in Sweetwater County, Wyoming, in case #CR-10-95-R.[8]

---

[2] *Id.*

[3] Mot., ECF No. 19 at 2 ¶ 3; Pl. Obj. Ex. A, ECF. No. 20-2 at 10-11.

[4] Mot., ECF No. 19 at 4, ¶ 15; Mot. Ex. 5.

[5] *Id.*

[6] Pl. Obj. Ex. A, ECF No. 20-2 at 10.

[7] *Id.*

[8] *Id.*

Nine years later on October 22, 2019, Defendant co-signed an automobile loan at the request of her son Mr. Smith.[9]  Both signed a "Motor Vehicle Retail Installment Sales Contract - Simple Finance Charge" (the "Note") listing "North Central Ford" as Lender, which was either assigned to or is now held by InTouch Credit Union.[10]  The Note lists "Deborah Ann Smith" of Marshall, TX as "Buyer" and "Matthew Bradley Smith" of Dallas, TX as "Co-Buyer."[11]  The automobile purchased was a 2017 Ford F-150, VIN No. 1FTEW1EG5HKC16314 (the "Truck").[12]  The Texas Certificate of Title issued for the Truck lists "Deborah Ann Smith" and "Matthew Bradley Smith" as owners, and lists the lienholder as InTouch Credit Union.[13]  This Truck was purchased because Mr. Smith's prior vehicle needed to be replaced after an accident in which Defendant understood he was not at fault.[14]

Defendant signed a declaration in support of the Motion.[15]  In it, Defendant states that she co-signed the Note while at work when "a courier

---

[9] Mot., ECF No. 19 at 2 ¶ 1; Mot., Ex. 1.

[10] Mot., Ex. 2.

[11] *Id.*

[12] *Id.*

[13] Mot., Ex. 3.

[14] Mot., ECF No. 19 at 2 ¶ 2; Mot., Ex. 1.

[15] Mot., Ex. 1.

came to my job with paperwork for me to sign."[16]  She also states that "[i]n

October 2019, when I signed the loan, Matthew had not lived with me for over

25 years."[17]  Further, Defendant says that "[a]t the time when the loan was

made, I also did not know that Matthew had a history of arrests for

alcohol-related offenses" and that "[a]fter his arrest for the manslaughter of

Mr. Chainy, I learned he had numerous arrests for drunk driving, with the

last arrest being in 2010, nine years before the truck loan."[18]  In discovery,

Defendant answered similarly that she became aware of Mr. Smith's arrest

for driving while intoxicated "[a]round February 2020."[19]  Plaintiffs allege

Defendant knew of Mr. Smith's drunk driving history and yet still co-signed

the Note.[20]

 Four months after purchase of the Truck, Mr. Smith was arrested

February 29, 2020 for a fourth in Texas, and sixth overall, charge of driving

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] Pl. Obj,. Ex. F.  The quoted answer comes from Defendant's "Amended Response to Plaintiffs' First Set of Interrogatories."  Plaintiffs allege Defendant knew of her son's alcohol problems earlier because of her original answer to this interrogatory in her "Response to Plaintiffs' First Set of Interrogatories."  Pl. Obj., ECF No. 20 at 12 ¶ 24.  In doing so however, Plaintiffs ignore Defendant's duty to supplement discovery answers which may be incorrect or incomplete.  *See* Fed. R. Civ. P. 26(e)(1)(A); *see also Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82 (5th Cir. 1994).  The Court has no reason to believe, and will not assume, that Defendant's amended and sworn interrogatory answer is false.

[20] Pl. Obj., ECF No. 20 at 11 ¶ 23.

while intoxicated in Dallas County, Texas.[21]  After Mr. Smith's last arrest for

driving while intoxicated, and prior to his subsequent conviction, Mr. Smith

on January 1, 2022 drove the Truck while intoxicated and tragically struck

and killed Mr. Chainy.[22]  He was arrested again and on January 6, 2022 an

"Order Relating to Conditions of Bond" was imposed in Dallas County,

Texas.[23]  This order required any vehicle operated by Mr. Smith, if released

on bond, to have an interlock device installed.[24]  Ultimately, Mr. Smith pled

guilty and was convicted on the final driving while intoxicated charge on

April 26, 2023 in Dallas County, Texas in case #F-2200362-W.[25]  The criminal

sentence imposed because of this conviction was a ten year prison

confinement.[26]  On August 31, 2023 Mr. Smith also pled guilty to

manslaughter because of Mr. Chainy's death and was sentenced to fifteen

years in prison.[27]  While Mr. Smith's criminal case was pending, Plaintiffs on

March 30, 2022, filed a civil action against him for wrongful death and

---

[21] Mot., Ex. 4.

[22] Mot, ECF No. 19 at 5 ¶ 20.

[23] Mot., Ex. 6.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] Mot., Ex. 11, ECF No. 19-13.

against Defendant, Mrs. Smith, for negligent entrustment.[28]

On August 22, 2022, Defendant filed a voluntary petition for Chapter 7

bankruptcy, together with original schedules and statements.[29]  On Schedule

A/B, Defendant listed the Truck as a vehicle she owned and added the

following comment:

> "Debtor's son's truck.  Was involved in an accident and is currently
> impounded.  Debtor's son made payments.  Debtor's only connection to
> vehicle is that she co-signed the note and is on the title."[30]

Schedule E/F listed the vehicle Note as a nonpriority, unsecured debt.[31]

Defendant also listed Plaintiffs' damages claims against her as nonpriority,

unsecured debts on Schedule E/F.[32]

On November 21, 2022, Plaintiffs filed this adversary proceeding

seeking to except their claims from discharge under 11 U.S.C. § 523(a)(6).[33]

Subject to the outcome of this adversary proceeding, a discharge order was

---

[28] Mot., Ex. 7; Pl. Compl., ECF No. 1 at 6  ¶ 17.

[29] Mot., ECF No. 19 at 3 ¶ 8; Case 22-20084, ECF No. 1.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] Pl. Compl., ECF No. 1.

entered by this Court on November 23, 2022.[34]  Defendant timely answered.[35]

After the Motion was filed by Defendant, Plaintiffs timely responded, and

Defendant then replied.[36]

### III.  Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P.

56(c).  Thus, if summary judgment is appropriate, the Court may resolve the

case as a matter of law.

The moving party always bears the initial responsibility of informing

the court of the basis for its motion and producing evidence which it believes

demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477

U.S. at 323.  How the necessary summary judgment showing can be made

depends upon which party will bear the burden of proof at trial.  *See Little v.

Liquid Air Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994).  "A fact is material

---

[34] Case 22-20084, ECF No. 17.

[35] Def. Ans., ECF No. 4.

[36] ECF Nos. 19, 20, and 21.

only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire and Cas, Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *see also Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018).  "All reasonable inferences must be viewed in the light most favorable" to the nonmoving party, and "any doubt must resolved in favor of the nonmoving party." *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An actual controversy of fact exists where both parties have submitted evidence of contradictory facts. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Courts may accept the moving party's version of the facts as undisputed.  *Alvarez v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 548-49 (N.D. Tex. 2005) (overruled on other grounds); cf. *F.D.I.C. v. Foxwood Mgmt. Co., No.* 92-2434, 1994 WL 24911, at *6 (5th Cir. Jan. 14, 1994) (citing cases for the proposition that courts can accept the contents of a conclusory affidavit as true if they are unchallenged).  This comports with the notion that courts need not hunt through the record searching for a genuine issue of material fact.  *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998);  *Savers Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989).  Once the movant has met its burden, the nonmovant may not rest

upon allegations in the pleadings and still survive summary judgment. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).  The Court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

## IV. Discussion

Defendant, Mrs. Smith, asks for summary judgment and argues no genuine dispute exists as to any material fact that she did not have either the objective or subjective intent to cause the death of Mr. Chainy by co-signing the Note.  Plaintiffs disagree and ask for denial of summary judgment arguing Defendant possessed objective intent to cause the death of Mr. Chainy when she co-signed the Note.[37]  To succeed in raising a genuine issue, Plaintiffs need to produce some evidence either that Defendant actually intended to cause Mr. Chainy's death, or that co-signing the Note created a substantial certainty of harm to Mr. Chainy.

When a plaintiff seeks to except a debt from a discharge granted to a debtor, the plaintiff must prove its claims by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  All exceptions to discharge

---

[37] Pl. Obj. ECF No. 20 at 6 ¶ 13.

under 11 U.S.C. § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).  Debts arising "from willful and malicious injury by the debtor to another entity or the property of another entity" are nondischargeable in bankruptcy.  11 U.S.C. § 523(a)(6).  For an injury to be "willful," it must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhu v. Geiger*, 523 U.S. 57, 61-62 (1998).  Thus, reckless or negligent conduct by a debtor leading to an injury is insufficient. *Id.* at 64.  This means that § 523(a)(6) "applies to 'acts done with the actual intent to cause injury,' *but excludes intentional acts that cause injury*." *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 508 (5th Cir. 2003) (emphasis added) (quoting *Kawaauhau*, 523 U.S. at 61).  Injuries covered by this exception are not limited to physical damage or destruction. Harm to personal or property rights are also covered.  11 U.S.C. § 523(a)(6); *Cowin v. Countrywide Home Loans, Inc. (Matter of Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

The 11 U.S.C. § 523(a)(6) exception for willful and malicious injury by a debtor requires either: (1) objective substantial certainty of injury; or (2) subjective motive to cause harm.  *See Miller v. J.D. Abrams Inc. (Matter of*

*Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). The objective standard is met

when a court finds that a debtor intentionally took action(s) that necessarily

caused, or were substantially certain to cause the injury. *Rainey v. Davenport*

*(In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006). Under the

subjective test, a court must find that the debtor intended the actual injury

that resulted. *Id.* The objective standard recognizes "the evidentiary reality

that defendants rarely admit malicious intent." *Yu v. Lau (In re Lau)*, No. 11-

40284, 2013 WL 2476359, at *7 (Bankr. E.D. Tex. May 28, 2013). Thus, a

court must analyze from a reasonable person's perspective "whether the

defendant's actions were substantially certain to cause harm, [and] are such

that the court ought to infer that the debtor's subjective intent was to inflict a

willful and malicious injury on the plaintiff." *Boyle v. Berkenbile (In re*

*Berkenbile)*, No. 12-41969, 2014 WL 797743, at *9 (Bankr. E.D. Tex. Feb. 27,

2014) (citing *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-

35 (Bankr. W.D. Tex. 2009) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276

Fed. App'x. 360, 361-62 (5th Cir. 2007)). "Substantial certainty does not

mean absolute certainty, but it must be something more than a high

probability." *In re Jones*, 655 B.R. 884, 894 (Bankr. S.D. Tex. 2023).

    Plaintiffs do not appear to argue Defendant had subjective intent to

harm Mr. Chainy when co-signing the Note, and there is no evidence

Defendant knew or ever met Mr. Chainy.  Thus, the real question is one of

objective intent.  The Court must determine whether Defendant's act of co-

signing the Note was substantially certain to cause harm in order to justify

inferring she intended to inflict willful and malicious injury on Mr. Chainy.

As already stated, in the Fifth Circuit neither negligence nor recklessness

meets this standard for willful and malicious injury under § 523(a)(6), and so

debts arising from reckless or negligently inflicted injuries are not excepted

under 11 U.S.C. § 523(a)(6).  *Geiger*, 523 U.S. 57 at 64, 118; *Miller*, 156 F.3d

at 603.  Determining the existence of objective intent is necessarily a fact

intensive exercise, and the Court considers the evidence in the light most

favorable to the nonmovant.

Other courts have also carefully weighed evidence when determining

the existence of objective intent, and some of their decisions are instructive.

For example, in *Braziel*, debts arising from a debtor's act of illegally selling a

firearm to an individual who used it three years later to perpetrate a mass

shooting did not constitute a willful and malicious injury.  *Leyva v. Braziel (In

re Braziel)*, 653 B.R. 537, 558 (Bankr. N.D. Tex. 2023).  The debtor in *Braziel*

was an unlicensed dealer engaged in the business of selling firearms when he

sold a firearm to a buyer.  *Id.* at 543.  The debtor did not perform a

background check as required.  *Id.*  Had he done so, he would have discovered

the buyer was disqualified from buying or possessing firearms. *Id.*    Three

years later, the buyer used the firearm he purchased from debtor to kill

numerous people in a mass shooting. *Id.*  The *Braziel* court found no evidence

of subjective intent by the debtor to cause the mass shooting when he sold the

firearm to the buyer. *Id.* at 558.  Considering objective intent, the *Braziel*

court found the debtor intended to illegally sell the firearm to the buyer, but

that there was not a substantial certainty debtor could foresee or anticipate

that the buyer would use the firearm in a mass shooting. *Id.*  Thus, debtor's

illegal sale of the firearm did not establish his intent to injure the plaintiffs

under an objective standard.  The *Braziel* court denied the cause of action

under § 523(a)(6). *Id.*

The Fifth Circuit in *Red*, despite no finding of subjective intent, found a

substantial certainty of harm under § 523(a)(6) when a debtor intentionally

drove a car into a crowded bar. *Red v. Baum (In re Red)*, 96 F.App'x 229 (5th

Cir. 2004)) (unpublished).  In *Red*, debtor rear-ended another vehicle, pushing

that vehicle into an intersection. *Id.* at 230.  The debtor then crossed two

lanes of oncoming traffic and drove into a crowded bar, killing or injuring

several people. *Id.*  At trial, the parties disputed whether debtor was

conscious when he drove his car into the bar. *Id.*  The bankruptcy court found

the debtor's testimony unreliable, and concluded debtor was conscious. *Id.*

Debtor had no subjective intent, but debtor's actions created a substantial certainty of harm sufficient to find objective intent. *Id.* at 231. Thus, debts arising from the victims' injuries were nondischargeable under § 523(a)(6). *Id.*[38]

In *Delaney*, a debtor's accidental discharge of a firearm that caused unintended bodily injuries to another did not constitute a willful and malicious injury under § 523(a)(6). *Corley v. Delaney (In re Delaney)*, 97 F.3d 800, 802-803 (5th Cir. 1996). The victim was sitting in a vehicle parked in the debtor's driveway. *Id.* at 801. Debtor, a teenager, brought a loaded firearm to confront the victim, another teenager and "sometimes-friend." *Id.* With his finger on the trigger, debtor tapped the barrel of the gun twice on the windshield of the car in which the victim was seated to get his attention. *Id.* The firearm accidently discharged, injuring the victim. *Id.* The *Delaney*

---

[38] *Braziel* and *Red* were described by a sister court as follows:

> For example, debts related to a debtor's act of intentionally driving a car into a crowded bar and killing a creditor's relatives were found to be based on willful and malicious injuries. *See Mahadevan*, 617 F. Supp. 3d at 660 (citing *Red v. Baum (In re Red)*, 96 F. App'x 229, 230 (5th Cir. 2004)). But debts related to a debtor's act of illegally selling a rifle to an individual, who years later shot people, were not based on a willful and malicious injury. *See Leyva et al. v. Braziel (In re Braziel)*, 653 B.R. 537, 558 (Bankr. N.D. Tex. 2023). The debtor intended to sell the rifle to the third party. *Id.* at 557. And while the sale itself was an intentional illegal act, it was not an act intended to harm the victims under either an objective or subjective standard. *Id.*

*Wheeler v. Jones (In re Jones)*, 655 B.R. 884, 895 (Bankr. S.D. Tex. 2023).

court found no objective intent because debtor's actions did not create a substantial certainty of harm, though discharge of the firearm and the resulting injuries were "not completely unforeseeable." *Id.* at 802-803. Regarding subjective intent, the court found the *Delaney* debtor intended to tap the windshield with a loaded gun, but did not intend to discharge the firearm nor cause the victim's injuries. *Id.* at 803. As a result, the victim's injuries were not willful and malicious under § 523(a)(6). *Id.*

Finally, in *D'Amico*, two casinos alleged debts incurred by a debtor who gambled on credit were nondischargeable under § 523(a)(6). *Nev. Prop. 1 LLC v. D'Amico (In re D'Amico)*, 509 B.R. 550, 554 (S.D. Tex. 2014). The casinos extended credit in partial reliance on the balances of debtor's company's bank accounts as listed in credit applications submitted to the casinos by debtor. *Id.* After debtor failed to pay his gambling debts, the casinos discovered the accounts had insufficient funds to cover the losses. *Id.* The *D'Amico* bankruptcy court denied the casinos' cause of action under § 523(a)(6), finding no subjective or objective intent. *Id.* at 555-556. On appeal, the district court affirmed. Regarding objective intent, the district court said "[o]ne fact that often proves determinative in applying the objective test under § 523(a)(6) is the debtor's knowledge at the time of the injury-producing act." *Id.* at 558, citing and discussing *In re Williams*, 337 F.3d 504 (5th Cir. 2003) and *Texas*

*v. Walker*, 142 F.3d 813 (5th Cir. 1998).  Reviewing the record, the district court found "Appellants provided no 'explicit evidence' of D'Amico's knowledge at the time he applied for credit or at the time he signed the markers."  *Id*. at 560.  The district court also stated that "[b]ecause the Appellants relied solely on third-party information, the record is devoid of evidence of D'Amico's personal knowledge of the balances in the relevant bank accounts, the amount of any gambling winnings or losses, or his true financial condition at the time that he signed the markers."  *Id*.  Knowledge is not a substitute for objective intent, but the extent of a debtor's knowledge, if any, bears on whether a substantial certainty of harm exists rather than a high probability or the simple foreseeability that harm may result.  The probability of harm must be "so great, in light of all of the relevant facts and circumstances, that the harm could be said to have been substantially certain to result."  *Id*. at 563.

So then, is there a genuine issue of material fact in the admissible summary judgment evidence that when Mrs. Smith co-signed the Note, the resulting probability of Mr. Chainy's death was so great as to make his death substantially certain to occur?  Mrs. Smith's son had a history of convictions for driving while intoxicated.  However, Mr. Smith's last conviction for driving while intoxicated happened nine years prior to her co-signing the

Note, and he had not lived with her in over twenty five years.  Mrs. Smith co-signed and intended to co-sign the Note for purchase of the Truck.  She did not do so in the presence of her son.  She understood the Truck was a replacement vehicle purchased after an accident in which Mrs. Smith understood her son was not at fault. She did not choose or shop for the Truck. Mrs. Smith's declaration states that she did not know of her son's arrest history until after Mr. Chainy's death.[39]  Her discovery response supports this declaration.[40]

The Court finds the summary judgment evidence submitted by Plaintiffs, even in the most favorable light, does not raise a genuine issue that Mrs. Smith knew of her son's driving history when she co-signed the Note. Nor does it raise a genuine issue that the probability of Mr. Chainy's death was so great as to make it substantially certain to occur because of Mrs. Smith's signature.  Mrs. Smith could not foresee or anticipate with a substantial degree of certainty that co-signing the Note would mean her son would cause Mr. Chainy's death.  This evidence in this case has much more in common with *Braziel, Delaney*, and *D'Amico* than with *Red*.  Thus, the Court finds that the tragic and sad injuries Plaintiffs have suffered were not willful

---

[39] Mot., Ex. 1.

[40] Pl. Obj,. Ex. F.

and malicious injuries under § 523(a)(6) caused by Mrs. Smith because

neither subjective nor objective intent existed when she co-signed the Note.[41]

## V.  Evidence

In granting Defendant's Motion, the Court must consider Plaintiffs'

evidentiary objections.  A summary judgment must be supported by evidence

as required by Fed. R. Civ. P. 56(c).[42]  "Unsubstantiated assertions,

---

[41] It is worth noting here that the tort of negligent entrustment is not the same as a willful and malicious injury under § 523(a)(6).  *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (listing the five elements of negligent entrustment of a motor vehicle).

[42] Rule 56(c) states:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## A.  Defendant's Declaration

Plaintiffs first object to Defendant's declaration filed in support of the Motion.[43]  "An affidavit that sets forth facts that would be admissible as evidence and that is made by a witness with firsthand knowledge of, and who is competent to testify regarding, the matters asserted may be used to support or oppose a motion for summary judgment." *Lester v. Wells Fargo Bank, N.A.*, 805 Fed. Appx. 288, 290 (5th Cir. 2020); *see also* Fed. R. Civ. P. 56(c)(4).

Plaintiffs "object generally to the declaration as conclusory, derived from hearsay, lacking personal knowledge, lacking relevance, lacking authenticity as to attached documents; and not conforming to required precedent."[44]  Plaintiffs specifically contend Defendant's declaration should be ignored because "conclusory and self-serving declarations bring the credibility of the witness into question, a matter that must be decided by trial and not by

---

[43] Mot., Ex. 1.

[44] Pl. Obj. ECF No. 20 at 3-4 ¶ 6.

summary judgment."[45]  The Court finds these objections should be overruled.

Plaintiffs rely on *In re Reagor-Dykes Motors* for the correct proposition that a self-serving affidavit may raise an issue of credibility.  *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2022 WL 468065, at *4 (Bankr. N.D. Tex. Feb. 15, 2022).  Fifth Circuit precedent clearly states that credibility is not a matter for summary judgment.  The Fifth Circuit says:

> First, "self-serving" affidavits and depositions may create fact issues even if not supported by the rest of the record. Where self-interested affidavits are otherwise competent evidence, they may not be discounted just because they happen to be self-interested. Indeed, "[e]vidence proffered by one side to ... defeat a motion for summary judgment will inevitably appear 'self-serving.'" *Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016). But self-serving evidence may not be discounted on that basis alone. How much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage. *E.g., Int'l Shortstop, Inc.*, 939 F.2d at 1263.
>
> Rather, self-serving evidence must only comport with the standard requirements of Federal Rule of Civil Procedure 56. Self-serving affidavits and declarations, like all summary judgment evidence, must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And these facts must be particularized, not vague or conclusory. *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013).

*Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160–61 (5th Cir. 2021).

---

[45] Pl. Obj. ECF No. 20 at 6 ¶ 14.

Thus, the Court cannot consider Defendant's credibility, but must instead review Defendant's declaration for compliance with Fed. R. Civ. P. 56(c)(4).

Defendant's declaration meets the requirements of Fed. R. Civ. P. 56(c)(4) because the declaration meets the requirements of 28 U.S.C. § 1746.[46] Defendant's declaration is signed by her and states that "I, Deborah A. Smith, do declare under penalty of perjury that the following facts are true and correct . . ."[47] This is the same language contemplated by 28 U.S.C. § 1746.[48] It is true an unsworn affidavit may not be used to support or oppose a summary judgment, but 28 U.S.C. § 1746 is a statutory exception to this rule. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988); *see also Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 690 (1st Cir. 1993); *Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th

---

[46] The notes to Fed. R. Civ. P. 56 state: "A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit." Fed. R. Civ. P. 56.

[47] Mot., Ex. 1.

[48] 28 U.S.C. § 1746 states, in relevant part: "Wherever, under any law of the United States or under any rule . . . made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by . . . affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . (2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'."

Cir. 1998); *Sharkey v. Dixie Elec. Mbrshp. Corp.*, No. 04-423-B-M2, 2006 U.S.
Dist. LEXIS 106922, at *12 (M.D. La. 2006);  *Gezu v. Charter Communs.*, 17
F.4th 547, 555 (5th Cir. 2021).  The Court finds Defendant's declaration to
comply with this statutory exception, and to be within the confines of
competent summary judgment evidence permitted by Fed. R. Civ. P. 56(c)(4).

## B.   The Fifth Amendment

Plaintiff implicitly asks the Court to draw an adverse inference against
Defendant because of Mr. Smith's exercise of his Fifth Amendment privilege
during a deposition taken by Plaintiffs.  Recently, the Court considered the
Fifth Amendment in a different context.  *See SMGB, LLC v. Cross (In re
Cross)*, 653 B.R. 362, 375 (Bankr. E.D. Tex. 2023).  There the Court explained
the Fifth Amendment's role in a civil case as follows:

> It is well settled that an adverse inference may be drawn in a
> civil case when a party asserts his Fifth Amendment privilege.
> *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L.
> Ed. 2d 810 (1976) ("[T]he Fifth Amendment does not forbid
> adverse inferences against parties to civil actions when they
> refuse to testify in response to probative evidence offered against
> them"); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F.
> Supp. 2d 942, 1017 (S.D. Tex. 2010); *United States ex rel.
> Gonzalez v. Fresenius Med. Care N.A.*, 571 F. Supp. 2d 758, 764
> (W.D. Tex. 2008) ("[I]t is not unconstitutional to force civil
> defendants to choose between the negative inference drawn from
> their silence in a civil case and their Fifth Amendment privilege.
> ") (quoting [**13]  *United States ex rel. Shank v. Lewis Enters.,
> Inc.*, No. 04-CV-4105-JPG, 2006 U.S. Dist. LEXIS 22065, 2006
> WL 1064072, at *4 (S.D. Ill. Apr. 21, 2006)).

> The Fifth Circuit has "limited the value of the negative inference by recognizing that a party seeking summary judgment cannot rely solely on the other party's exercise of his fifth amendment rights." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n. 3 (5th Cir. 1990), *citing United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979) ("[A] grant of summary judgment merely because of the invocation of the fifth amendment would unduly penalize the employment of the privilege."). The Court finds Defendant may not withdraw his privilege, it remains intact, and the Court will draw an adverse inference against Defendant where and when appropriate. Any adverse inference drawn, however, may not be the sole evidentiary basis for granting Plaintiff's Motion.

*Id.* It is most common for an adverse inference be drawn against a *party* because of *that party's* exercise of the Fifth Amendment privilege. *Baxter v. Palmigiano*, 425 U.S. at 308. Here, the Court is presented not with this common scenario, but instead Plaintiffs impliedly ask for an adverse inference to be drawn against a *party* because of a *non-party's* exercise of the Fifth Amendment privilege.

The Fifth Circuit has in the past permitted such an adverse inference to be drawn in a civil proceeding. Specifically, the Fifth Circuit has said:

> F & D argues that inferences from the invocation of the Fifth Amendment are not allowed when a non-party asserts the privilege. We find no support for such a proposition. The Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976). We acknowledge that no party has refused to testify in this civil action, but "[a] non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree." *RAD Servs.,*

> *Inc. v. Aetna Casualty & Sur. Co.*, 808 F.2d 271, 275 (3d Cir.1986)
> (*citing Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521
> (8th Cir.), cert. denied, 469 U.S. 1072, 105 S. Ct. 565, 83 L. Ed. 2d
> 506 (1984)).

*FDIC v. Fid. & Deposit Co.*, 45 F.3d 969, 977 (5th Cir. 1995).  To understand

when and whether an adverse inference should be drawn against a *party*

because of a *non-party's* exercise of the Fifth Amendment privilege, the Court

finds *RAD Servs., Inc.* cited by the Fifth Circuit instructive.  *Rad Servs., Inc.*

*v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 274 (3d Cir. 1986).  Because the

"privilege against compelled self-incrimination operates differently in civil

and criminal proceedings" the Third Circuit wrote:

> The aims supporting the privilege simply apply less forcefully in
> civil than in criminal cases. A non-party's silence in a civil
> proceeding implicates Fifth Amendment concerns to an even
> lesser degree. *See Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733
> F.2d 509, 521 (8th Cir.), *cert. denied*, 469 U.S. 1072, 83 L. Ed. 2d
> 506, 105 S. Ct. 565 (1984). At least, then, to the extent that the
> policies underlying the privilege permit the trier of fact to know
> when a party has invoked it, we find that they likewise allow
> evidence of a non-party's refusal to testify under the facts here
> present.

*Id.* at 275.  In *RAD Servs., Inc.*, two employees of the plaintiff asserted their

Fifth Amendment privilege in a deposition taken by the defendant, an

insurer, in a dispute concerning insurance coverage for liability caused by the

plaintiff's improper disposal of hazardous waste.  *Id.* at 271.  The Third

Circuit, finding it appropriate under these circumstances to permit a jury to

drawn an adverse inference, explained that the "policies underlying the privilege" are "(1) to discourage inhumane treatment and abuses by the government; (2) to maintain the appropriate state-individual balance of advantages; (3) to avoid subjecting persons to the cruel trilemma of self-accusations, perjury, or contempt; and (4) to protect the private enclave." *Id*. at n.2.

Considering these same policies under the facts of this case, the Court finds under the reasoning of *RAD Servs., Inc.* and *FDIC*, that it may but is not required to draw an adverse inference against Defendant.[49]  Mr. Smith asserted the Fifth Amendment privilege, but he has already been convicted and sentenced for the crimes to which this civil proceeding relates.  There seems little risk then that drawing an adverse inference would result in inhumane treatment and abuses by the government, disturb the appropriate state-individual balance of advantages, subject him or Mrs. Smith to self-accusation, perjury, or contempt, or disturb their private enclave.  And yet, the Court declines to draw an adverse inference against Defendant for the simple reason that Mr. Smith's testimony does not support drawing such an inference.  Mr. Smith answered the most relevant question in the

---

[49] *See also United States v. Kellogg Brown & Root, Inc.*, No. 1:04-CV-42, 2015 U.S. Dist. LEXIS 178396, at *4 (E.D. Tex. 2015)(declining to drawn an adverse inference against a party because of the possible exercise of the Fifth Amendment Privilege by a non-party).

transcript excerpt provided by Plaintiffs in the following exchange:

> Q.  Okay.  So with respect to any question about your mother's knowledge in the past, about your history for DWI, for losing your license, things like that, how much your mother knew or didn't know, you're concerned that any testimony about those subjects might expose you to criminal liability; is that true?
>
> A.  Yes, sir.
>
> Q.  Okay.  So if we were to be talking in front of the fact finder in the bankruptcy court about whether your mother and you colluded or intentionally sought to defeat rules regarding ownership of the vehicle or operation of the vehicle or your ability to operate the vehicle, you're concerned that any answer you give about those subjects might expose you to criminal liability; is that true?
>
> A.  So in keeping with my Fifth Amendment plea, then I would say I -- I believe -- I -- I'm starting to feel a little bit, Counsel, like I'm being led or directed. There -- there was no -- there was no collusion, and Mom is an angel. Mom knows nothing about anything. I'm a private individual.[50]

Plaintiffs would have the Court draw an adverse inference from these and similar questions that Defendant knew about Mr. Smith's history of alcohol related driving infractions, and that she somehow colluded with him to elude unspecified rules to which he was subject.  The Court cannot do this where Mr. Smith affirmatively answered that Defendant "knows nothing about anything" in a video deposition taken while he was incarcerated.[51]

---

[50] Pl. Obj. Ex. C, 12-13.

[51] *Id.* at 5.

Furthermore, declining to draw an adverse inference is not dispositive in this case. Any such inference would be of limited value because, in producing sufficient evidence to raise a genuine issue of material fact in opposition to Defendant, Plaintiffs cannot rely only on such an inference. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n. 3 (5th Cir. 1990), *citing United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979).

## VI. Conclusion

In granting Defendant's Motion, the Court in no way means to ignore or minimize the heartbreak and suffering Plaintiffs have endured because of Defendant's son. The Court is nevertheless bound to make decisions based on precedent and evidence in applying 11 U.S.C. § 523(a)(6).

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the Defendant's Motion is hereby GRANTED. Plaintiffs failed to demonstrate there exist genuine issues of material fact that Defendant had either the objective or subjective intent to cause willful and malicious injury through the wrongful death of Mr. Chainy by co-signing a car loan for her son. An appropriate order consistent with this opinion shall be entered by the Court.

Signed on 05/16/2024

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE